**B. Man YOON, Plaintiff–Appellant,**

**v.**

**FORDHAM UNIVERSITY FACULTY AND ADMINISTRATIVE RETIRE-MENT PLAN, Fordham University, and Donald D. Cipullo, as Administrator of the Fordham University Faculty and Administrative Retirement Plan, Defendants–Appellees.**

**Docket No. 00–9465.**

United States Court of Appeals, Second Circuit.

Argued May 30, 2001.

Decided Aug. 30, 2001.

Edgar Pauk, New York, N.Y. (Prof. Jay Carlisle, of counsel, on the brief) for appellant.

James E. McGrath III, Putney, Twombly, Hall & Hirson, New York, N.Y. (Marc B. Zimmerman, Alexander Tchernovitz on the brief) for appellees.

Before: CALABRESI and KATZMANN, Circuit Judges, and KAPLAN, District Judge.*

CALABRESI, Circuit Judge:

B. Man Yoon ("Yoon" or "plaintiff") appeals from a grant of summary judgment issued by the United States District Court for the Southern District of New York (Casey, *J.*) on behalf of defendants Fordham University ("Fordham" or "the University"), the Fordham University Fac-

---

* The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

ulty and Administrative Retirement Plan ("the Plan"), and Donald Cipullo, the administrator of the Plan ("Cipullo" or "the Plan Administrator"). Yoon, who has been embroiled in a tenure dispute with Fordham since 1981, filed claims sounding, *inter alia*, in breach of contract and arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for unpaid salary and pension benefits. The district court dismissed plaintiff's claims against the University and the Plan on *res judicata* grounds, finding that a prior suit brought by Yoon against Fordham in New York state court prevented him from asserting these causes of action in federal court. Yoon's three claims against the Plan Administrator were dismissed on their merits. While affirming some of the district court's rulings on *res judicata*, we decline to review others at this time, and remand. We do this because we believe this case to be an unusual one in which it is appropriate to take up the merits of some of plaintiff's claims before deciding whether, even if meritorious, these claims are precluded. The reason for this—arising in part from the availability of, and limits on, certification—is the core of this opinion.

## BACKGROUND

Plaintiff-appellant B. Man Yoon began his employment with Fordham University in the academic year 1968–69 as an Assistant Professor in its School of Business Administration. He was granted tenure in 1971. In April 1981, however, Professor Yoon was informed that, due to complaints about his teaching, he would be relieved of his duties as a professor and would be given an administrative position as Associate Dean. Yoon and the University were, however, unable to agree on the terms of

Yoon's new appointment, and, in May 1981, Yoon asked that he be restored to his teaching duties. The University refused to accommodate his request. With the University unwilling to permit Yoon to teach,[1] with the two sides unable to find mutually satisfactory administrative work for Yoon to perform, and, as a corollary, with Yoon performing no services at all for the University, Fordham discontinued payment of Yoon's salary, in January of 1983.

On November 15, 1983, Fordham informed plaintiff that formal proceedings to dismiss him from the University had been initiated. By December 30, 1985, however, these proceedings had not been completed, and on that date, Professor Yoon, through counsel, sent Fordham a letter asking that the University either finish the dismissal process or restore him to his teaching duties. In response, on January 9, 1986, counsel for the University sent Yoon a letter noting that "Dr. Yoon has not performed *any* of the responsibilities expected and required of all Fordham faculty members. Not only has he refused and ignored all assignments made to him and failed to participate in the activities of the School, he has entirely and consistently absented himself from the University." Accordingly, the letter explained, there was "no reason to take any further steps [to terminate Yoon] under ... the University Statutes [because] it is perfectly clear that Dr. Yoon has by his unambiguous conduct abandoned, repudiated, breached, and nullified his contract with the University."

On May 21, 1987, plaintiff initiated an action against Fordham in New York State Supreme Court seeking reinstatement to his teaching duties and faculty privileges, as well as back pay dating to January 1,

---

1. The parties discussed the possibility of Yoon working in a "team teaching" environment, but such an arrangement never came to pass.

1983. Seven years later, on February 18, 1994, the trial court dismissed the action on the ground that the proper vehicle for Yoon's claim for reinstatement was an Article 78 proceeding, and that the limitations period for filing such an action had run. On appeal, Yoon conceded that his reinstatement claim could not go forward and agreed to seek only back pay. Yoon contended that "until he is dismissed by proper tenure procedures, he is entitled to his salary." *Yoon v. Fordham Univ.,* 216 A.D.2d 184, 628 N.Y.S.2d 288, 289 (1st Dep't 1995). The Appellate Division noted that the remaining claim was not governed by the four month statute of limitations applicable to the reinstatement claim. Accordingly, Yoon's cause of action for payment of his salary and benefits was resuscitated and remanded to the trial court. *Id.* On remand, however, plaintiff, who by that time was living in South Korea, failed to appear on the date of trial, and a default judgment was entered, on November 25, 1995, in the University's favor.[2]

Three years later, Yoon contacted Donald Cipullo, the administrator of the pension fund for Fordham faculty, and informed him that he believed that Fordham was (and had all along been) required to continue contributing to his pension. Yoon explained that, in his view, such contributions were mandated because formal dismissal proceedings against him had never been completed, and so he remained a tenured employee of the University. Yoon requested that the Administrator enforce the University's obligations by demanding contributions to cover the period from September 1, 1983 (the time at which the University had ceased contributing to plaintiff's pension plan) to date.[3] Cipullo denied Yoon's claim, stating, in a letter, that "we know of no legal basis for Dr. Yoon's claim. . . . Dr. Yoon has discontinued his employment at Fordham [and has] litigated and lost his claim for salary and benefits." Yoon subsequently appealed Cipullo's decision, but no decision on the appeal was ever issued.

On November 3, 1999, Yoon began this action in the United States District Court for the Southern District of New York. Claims one and six, of the six Yoon brought, sought relief against the University for failure to contribute to Yoon's pension plan, in violation of ERISA §§ 502(a)(1)(b) and 502(a)(3), and for failure to pay his salary during the years immediately preceding the filing of the federal court action. Claim two sought relief against the Plan, under ERISA § 502(a)(1)(B), for failure to include contributions from the University after September 1, 1983 in the Plan's calculation of Yoon's pension. The three remaining claims were brought against the Plan Administrator. In these, Yoon alleged that Cipullo had breached his fiduciary duty by failing to enforce the Plan's requirements, and had violated ERISA (1) by failing to

---

**2.** A subsequent motion by Yoon to vacate the default judgment was denied, and this denial was affirmed on appeal. *See Yoon v. Fordham Univ.,* 249 A.D.2d 176, 672 N.Y.S.2d 677 (1st Dep't 1998). Leave to appeal to the New York Court of Appeals was denied as well. *See Yoon v. Fordham Univ.,* 92 N.Y.2d 946, 681 N.Y.S.2d 476, 704 N.E.2d 229 (1998).

**3.** Yoon also asked that Cipullo provide him with certain information about the Plan, including a "Summary Plan Description" ("SPD"), as well as information about Ford-

ham's salary rates for 1983–1999 and certain of the Plan's IRS forms. Cipullo responded by providing Yoon with copies of an SPD as well as the Plan's most recent IRS Form 5500. Cipullo informed Yoon that information about the University's salary rates was not maintained by the Plan and that, in any event, the Plan Administrator had no obligation under ERISA to turn over such information. He also told Yoon that he was not obligated to provide copies of the IRS 5500 Forms relating to previous years.

decide Yoon's appeal within 60 days as required by 29 C.F.R. § 2560.503–1(h)(1), and (2) by failing to provide Yoon with all of the documents and information he had requested.

Both parties moved for summary judgment. The district court concluded that claims one, two and six were precluded. This was so, according to the district court, because "[e]xcept for the time period," Yoon's breach of contract claim was "the precise claim he brought in the state court action." As to Yoon's pension fund claims against the University and the Plan, Judge Casey found that they could have been brought in the state court action and, hence, they too were barred by *res judicata.*

The three claims against Cipullo were dismissed on their merits. Specifically, Judge Casey found that (1) because no pension contributions were required while no salary was being paid to Yoon, the Administrator did not breach any fiduciary duty to Yoon by failing to enforce the University's contribution requirements; (2) Cipullo's failure to decide Yoon's appeal within the 60 days required by the CFR did not constitute a violation of ERISA because, under former 29 C.F.R. § 2560.503–1(h)(4), "[i]f the decision on review is not furnished within such time, the claim shall be deemed denied on review," and thus Yoon's appeal had, in fact, been decided in a manner consistent with the governing statute; and (3) even if it was the case that the Administrator had failed to provide Yoon with certain documents that should have been turned over upon request, Yoon had failed to allege that he had suffered actual harm, or that Cipullo had acted in bad faith, and hence, no relief was forthcoming. Accordingly, in an Opinion and Order issued on October 12, 2000, Judge Casey granted defendants' motion for summary judgment and denied that of the plaintiff.

This appeal followed.

## DISCUSSION

We review the district court's grant of summary judgment *de novo. See Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001) (*per curiam* ). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001).

Under 28 U.S.C. § 1738, we are required to give to a state court judgment the same preclusive effect that it would have in a state court. *See, e.g., Green v. Montgomery,* 219 F.3d 52, 55 (2d Cir. 2000). New York employs a "transactional approach" to *res judicata;* thus "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981). Moreover, "[t]he doctrine is applicable to an order or judgment taken by default which has not been vacated, as well as to issues which were or could have been raised in the prior proceeding." *Eagle Ins. Co. v. Facey,* 272 A.D.2d 399, 707 N.Y.S.2d 238, 239 (2d Dep't 2000); *see also Tantillo v. Giglio,* 156 A.D.2d 664, 549 N.Y.S.2d 432, 433 (2d Dep't 1989) ("Under New York law, a default judgment generally bars litigation of issues that were, or

could have been, determined in the prior action.").

■■ The dispositive issue in Yoon's suit for unpaid salary (claim six) is the same as that in the state court action with respect to which he defaulted.[4] And the New York courts have repeatedly held that:

Under [New York's transactional] analysis, a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action "may nevertheless be grounded *on the same gravamen of the wrong* upon which the action is brought."

*Gross v. Glick*, 183 A.D.2d 748, 583 N.Y.S.2d 486, 488 (2d Dep't 1992) (quoting *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172 (1978)) (emphasis added); *see also, e.g., Couri v. Westchester Country Club*, 186 A.D.2d 715, 589 N.Y.S.2d 494, 496 (2d Dep't 1992) ("[S]ubsequent claims are barred if they are coterminous with the transaction ... from which the earlier claims arose, meaning that if the facts upon which these claims are based are related in time, space, origin, or motivation ... they form a convenient trial unit, and ... their treatment as a unit conforms to the parties' expectations") (internal quotation marks omitted).

Applying this standard, even if we accept Yoon's contention that, under New York law, a separate cause of action would lie for each salary payment that was withheld from him, his present salary suit still could not go forward. Yoon's complaint in the state court action did not request payment only for the time between 1982 (when Fordham stopped paying him) and 1987 (when the state suit was filed). Rather, it requested that the court order Fordham, to "continue to pay plaintiff his salary and other benefits until and unless he is dismissed from his tenured position by the University's Board of Trustees in accordance with the substantive and procedural provisions of the University's Statutes."[5] Having defaulted on this claim, plaintiff has, under New York law, lost the opportunity to recover salary from Fordham.[6]

■■ The district court also held that Yoon's first and second claims, against the University and the Plan, respectively, for pension contributions, were barred by *res judicata*. Applying New York's transactional analysis, Judge Casey found that these claims "could have been determined by the state court." *Yoon*, 2000 WL 1521176, at *4. In reaching this conclusion, the court below rejected Yoon's argument that ERISA mandates exclusive federal jurisdiction over his pension claims, that as a result these claims could not have been presented to the state courts together with

---

4. Thus, plaintiff insists, as he did before the state courts, that he is still a tenured employee of Fordham University and is therefore entitled to his salary until the University completes formal dismissal proceedings. *Compare* Appellant's Brief at 12, *with* Verified Complaint of Plaintiff B. Man Yoon in *Yoon v. Fordham University*, (Sup.Ct. N.Y. Cty.) at 11, 15–16. Similarly, the University's defense, in both federal and state court, has been that Yoon repudiated his contract with Fordham and, hence, is no longer a tenured faculty member entitled to a salary. *Compare* Appellees' Brief at 2, *with* Verified Answer of De-

fendant Fordham University in *Yoon v. Fordham University*, (Sup.Ct. N.Y. Cty.) at 9.

5. In that suit, moreover, the plaintiff alleged the same facts alleged here.

6. Because we affirm the judgment of the district court as to this issue, it is not necessary for us to take up appellees' contention that the *Rooker Feldman* doctrine provides an independent basis for barring Yoon's salary claims. As to Yoon's pension claims, for the same reasons that there is no collateral estoppel in this case, *see infra*, note 7, the *Rooker Feldman* doctrine does not apply.

his defaulted salary ones, and hence that *res judicata* cannot apply. *See id.* ("Section 502(e)(1) of ERISA expressly provides ... that state and federal courts enjoy concurrent jurisdiction over claims [like Yoon's]."). The district court also found that the University and the Plan were in privity with one another, and thus, notwithstanding the fact that the Plan was not a defendant in the state court action, *res judicata* barred the claims against it. *Id.* On appeal, plaintiff challenges both of these conclusions, contending that the district court (1) misapplied the relevant provisions of ERISA, and (2) erred in finding privity between the University and the Plan.[7]

It is, however, premature for us to take up either of these questions. For, no matter what our conclusions with respect to these issues would be, a remand of the case to the district court for a consider-ation of the merits of Yoon's employment status claim is appropriate. Thus, even if we were to agree with the court below that ERISA's jurisdictional requirements do not preclude *res judicata*, and that the University and the Plan are in privity, that would not end the matter.

On appeal, Yoon argues (for the first time), that under New York Civil Practice Law and Rules § 3003, *res judicata* cannot be applied to pension claims such as his.[8] That provision states, in pertinent part:

> The commencement or maintenance of an action for the recovery of payments which have become due under the terms of a written agreement providing for the payment of a pension ... shall not be deemed to bar subsequent actions to recover payments thereafter becoming due under the terms of such agreement.

NYCPLR § 3003. If, indeed, § 3003 governs Yoon's pension claims, then the ques-

---

7. Defendants argue that it is not necessary for this court to answer these questions in order to dispose of Yoon's claims for pension contributions. These, the defendants assert, cannot lie because, under the express terms of the Plan, Yoon was due such contributions only during those months in which he was entitled to salary payments. Accordingly, defendants contend, because Yoon cannot, given his default and the doctrine of *res judicata*, obtain a legal judgment entitling him to the disputed salary payments, he cannot have a right to pension contributions either. *See* Appellee's Brief at 29–31.

But the fact that, because of *res judicata*, Yoon cannot raise the question of his right to salary *for purposes of getting salary* (past, present, and future) does not mean that he is barred from raising the question of his entitlement to salary in order to establish a contractual basis for the payment of pensions. For to deprive Yoon of the right to litigate the *issue* of his entitlement to salary would be to estop him collaterally from doing so. And, under New York law, collateral estoppel forecloses only those issues that have been "actually litigated and determined in a prior action," and "[a]n issue is not actually litigated if there has been a default." *Pigliavento v.*

*Tyler Equip. Corp.*, 233 A.D.2d 810, 650 N.Y.S.2d 414, 415 (3d Dep't 1996). Thus the fact that we herein affirm the district court's conclusion that Yoon is barred by *res judicata* from recovering salary is not germane to the question of whether he is permitted to argue his rights to salaried status for purposes of establishing the predicate for his pension claims.

8. Given the confused and complex potential relationship between ERISA and the state pension claim, and the complicated relationship between collateral estoppel and *res judicata* with respect to some of the claims that the plaintiff brought (a relationship that has not been easy for us, no less than the district court, to sort out, *see supra* note 6), we are unwilling to fault plaintiff for not raising the statute below. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir.1996) ("Although it is the general rule ... that a federal appellate court does not consider an issue not passed upon below, the matter of what questions may be taken up ... for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." (internal quotation marks and citations omitted)).

tions of whether (1) ERISA permits state courts to take up claims such as Yoon's, and (2) the University and the Plan are in privity with one another are moot. For as a matter of New York law (which, we have noted, *see supra,* we are required to follow), *res judicata* could not apply.

▮ At this juncture, however, we are not prepared to determine whether and how § 3003 might apply to this case. That statute has never been interpreted by the New York courts. And it is well-established that the controlling interpretation of state laws should normally be given by state rather than federal courts. *See, e.g., Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (noting the advantage of "plac[ing] state-law questions in [state] courts [which are] equipped to rule authoritatively on them"); *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (remarking that, with respect to state law, the federal courts act "as 'outsiders' lacking the common exposure to local law which comes from sitting in the jurisdiction"). This, moreover, is especially true when a first reading of a statute is involved. *See Arizonans,* 520 U.S. at 79, 117 S.Ct. 1055 (noting that a "federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court").

Under the circumstances, it would ordinarily be appropriate for this court to seek guidance from the New York Court of Appeals as to the meaning of § 3003. But in the peculiar circumstances of this case, we ought not yet certify the question of § 3003's meaning to the Court of Appeals. That court will normally accept certification only of "determinative questions of New York law." N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(a) (1999). And we cannot say, at this time, that state law will be determinative in this case. This is so for two reasons.

First, until we know whether there is merit in Yoon's contention that, although precluded from recovering salary payments by his default, he is nonetheless still employed by Fordham and hence entitled to salary status for pension purposes, we cannot decide whether his pension claims are viable. Since the question of what § 3003 means and whether *res judicata* applies to these pension claims arises only if such an entitlement is found to exist, it may well be that certification will not be needed. Second, defendant asserts that § 3003 itself cannot apply because it is preempted by ERISA. The New York Court of Appeals has understandably been reluctant to accept certification when the unsettled issue of New York law was intertwined with federal questions and especially with ERISA ones. *See, e.g., Yesil v. Reno,* 92 N.Y.2d 455, 682 N.Y.S.2d 663, 664, 705 N.E.2d 655 (1998) (denying certification and noting that "[i]ndeed, the Federal courts—the unique forums to handle litigation involving the INS—are in the best position to assess and rule with respect to that Agency's agents and activities in New York for jurisdictional purposes"); *Grabois v. Jones,* 88 N.Y.2d 254, 644 N.Y.S.2d 657, 657, 667 N.E.2d 307 (1996) (denying certification after remarking that "the interplay between Federal and State law in interpreting issues of statutory construction under ERISA is as yet not fully settled. This issue may thus be more appropriate for resolution in the first instance by the Federal courts"). As a result, in the current state of the case, certification is not appropriate. For—even if we agreed with the district court's view as to the applicability of *res judicata* were there no § 3003—the presence of § 3003 means that a decision on the merits of Yoon's claim to employment status is best

made before a consideration of *res judicata*.[9]

The same result would obtain if we disagreed with the district court and concluded that (1) ERISA prohibits the state courts from taking up pension claims like Yoon's, and, as a corollary, *res judicata* cannot apply, or that (2) the University and the Plan are not in privity with one another and so the prior state court suit against the University cannot for that reason give rise to a *res judicata* bar with respect to the Plan. In these circumstances too, we would remand to the district court so that it could determine whether Yoon's pension claims are meritorious.[10]

It follows that the district court's dismissal of plaintiff's first and second claims must be vacated and those claims remanded to that court. The district court should first determine whether Yoon's claim as to employment status, and hence, to salary entitlement, though foreclosed from giving rise to rights to salary payments, is valid and therefore provides the predicate for his pension claims.[11] If the court below

9. We could, of course, try to decide the issue of the relationship between ERISA and § 3003 ourselves at this time. But this would not be wise. The district court has, obviously, not yet had a chance to consider the questions. And it is by no means impossible that preemption will itself depend on the meaning and scope of § 3003. Before we embark on what may well be a complicated ERISA preemption analysis, we should be sure that such analysis is necessary to deciding the case.

10. Under these conditions, of course, it would be unnecessary for us to determine whether § 3003 applied.

11. Yoon's third and fifth claims, which allege (a) that the Plan Administrator breached his fiduciary duties by not enforcing the University's contribution requirements, and (b) that the administrator failed to provide Yoon with documents in a timely fashion, are likewise vacated and remanded. The district court dismissed Yoon's third claim, finding that because the Plan did not require contributions during periods in which no salary was paid, "no reasonable juror could find that the Plan Administrator had a duty to require Fordham to make such contributions when Dr. Yoon was not receiving a salary." *Yoon*, 2000 WL 1521176, at *4. That ruling may well be correct but it was inevitably based in part on the district court's belief that Yoon's pension claim was itself barred. Accordingly, because we conclude that plaintiff may not be foreclosed from demonstrating that he was entitled to pension contributions, we remand the question of whether Cipullo breached any fiduciary duties to Yoon for the district court's consideration in the first instance.

We also remand Yoon's fifth claim. The district court stated that "[e]ven assuming Mr. Cipullo did not provide Dr. Yoon with documents in a timely fashion, the law in this Circuit is clear—sanctions against a plan administrator under ERISA 502(c)(1)(B) are not warranted absent allegations of actual harm or bad faith." The law in this Circuit, however, is not yet clear on this point. Other Circuits, moreover, in considering the issue have found that while prejudice and bad faith are relevant factors to be used by the district court in exercising its broad discretion in this area, they are not prerequisites to recovery. *See, e.g., Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir.1999); *Davis v. D.L. Featherstone*, 97 F.3d 734, 738 (4th Cir .1996); *see also Kascewicz v. Citibank N.A.*, 837 F.Supp. 1312, 1321–22 (S.D.N.Y.1993) (collecting cases). Some district courts in this Circuit have also taken this approach. *See, e.g., Kascewicz*, 837 F.Supp. at 1322; *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 87 (S.D.N.Y.1999); *Scarso v. Briks*, 909 F.Supp. 211, 214–15 (S.D.N.Y.1996); *Pagovich v. Moskowitz*, 865 F.Supp. 130, 137–38 (S.D.N.Y. 1994). But others have found that bad faith or prejudice is required. *See, e.g., Cappiello v. NYNEX Pension Plan*, 1994 WL 30429 at *5 (S.D.N.Y.1994); *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 233 (S.D.N.Y.1989); *see also Plotkin v. Bearings* Ltd., 777 F.Supp. 1105, 1108 (E.D.N.Y.1991). We have said that in the absence of prejudice, it was not an abuse of discretion for a district court to decline to award penalties. *See Demery v. Extebank Deferred Compensation Plan*, 216 F.3d 283, 290 (2d Cir.2000). But, *Demery* does not precisely answer the question of whether prejudice is a *prerequisite* to recovery of penalties. Under the circumstances, it is appropriate to remand this issue for the district court's consideration and possible eventual exercise of discretion.

answers this question in the negative, it will be unnecessary to decide whether *res judicata* bars the pension claims. They will have failed on their merits. If, on the other hand, the district court determines that Yoon's pension claims are viable, it will have to decide—since certification is not available in the district court—what § 3003 means, and whether, given that meaning, ERISA preempts the statute. Only on appeal from these, and from any earlier district court rulings that we have not affirmed today and that still remain relevant, would we have to see whether, in the then-state of the case, certification of the meaning of § 3003 would be needed and appropriate.

\* \* \*

The district court's dismissal of plaintiff's claim six, for salary payments, is AFFIRMED. The dismissal of claims one, two, three, and five is VACATED and those claims are REMANDED to the district court. Finally, the district court's dismissal of claim four, against the Plan Administrator, is AFFIRMED for substantially the reasons given by that court.[12]

KAPLAN, District Judge.

I concur in the result reached by the majority and so much of the opinion as deals with Yoon's third, fourth, fifth and sixth claims. I respectfully disagree, however, with the treatment of the CPLR § 3003 point and with the majority's failure to address the merits of the *res judicata* issue insofar as it relates to the first five claims.

My first concern is with the majority's excusal of the plaintiff's failure to raise his CPLR § 3003 argument in the district court, which runs directly contrary to the settled practice of this and, for that matter, most appellate courts. *Mellon Bank N .A. v. United Bank Corp.*, 31 F.3d 113, 116 (2d Cir.1994) ("We will hear new argument on appeal only when necessary to avoid manifest injustice."); *Accord, e.g., Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 132 (2d Cir.2001). Consideration of the Section 3003 argument is not necessary to avoid manifest injustice. Moreover, both litigants and *nisi prius* judges are entitled to rely on appellate courts deciding appeals on the records and arguments advanced in the courts of first instance. Except in extraordinary cases, neither should be put to the burden and expense of remands necessitated by ideas belatedly advanced for the first time on appeal. In my judgment, nothing about this case warrants departure from this salutary principle. I therefore see no justification for us or, on remand, for the district court to address the Section 3003 issue.

My second difference with the majority lies in its refusal to decide whether the court below correctly dismissed the first and second claims for relief on the ground of *res judicata* and its remand of the case on the possibility that plaintiff's claims will fail on the merits, thus avoiding the need to decide the *res judicata* issues. The doctrine of former adjudication, of which *res judicata*, or claim preclusion as it often is called, reflects a policy of repose. *E.g., Johnson v. Nyack Hospital*, 891 F.Supp. 155, 164 (S.D.N.Y.), *aff'd*, 86 F.3d 8 (2d Cir.1996). Once having litigated a dispute, a party ought not be forced to do so again. While I recognize that courts often do—and in the interest of efficiency frequently should—decide a potentially dispositive issue "out of order" in the sense, for exam-

---

**12.** Cipullo's decision to let the relevant sixty-day time period lapse on Yoon's appeal from his denial of benefits (claim four), far from violating ERISA, is expressly contemplated in the applicable provision of the Federal Regulations, *see* former 29 C.F.R. § 2560.503–1(h)(4) *amended* 65 F.R. 70265 (Nov. 21, 2000).

ple, that one might dismiss a case on the ground that a plaintiff was not injured without even addressing the question whether the defendant acted improperly, this is not an appropriate situation in which to do so.

Here the district court held that Fordham and the Plan, assuming it is in privity with Fordham for former adjudication purposes, have a substantive legal right that prevents them from being forced to litigate Yoon's latest theories now, Fordham once before having prevailed against him. By remanding for consideration of the merits before reaching the *res judicata* question, the majority may be abrogating the defendants' right not to be subjected to any further proceedings. In substance, it is rejecting the *res judicata* defense without reaching it. Its action is equivalent to refusing to decide a defense of absolute or qualified immunity prior to a decision on the merits on the theory that the plaintiff might lose on the merits and therefore obviate the need to reach the immunity issue. Doing so in the immunity context is inappropriate absent a genuine issue of fact as to the existence of immunity precisely because the official's immunity is an immunity against having to answer the suit, not merely an immunity against liability. *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir.2000); *Boice v. Unisys Corp.,* 50 F.3d 1145, 1148 (2d Cir.1998); *Giacalone v. Abrams,* 850 F.2d 79, 84 (2d Cir. 1988). So too here. In both cases, a refusal to decide these particular substantive defenses is not merely a matter of judicial convenience, but runs a substantial risk of trampling on protected rights of parties. Accordingly, I feel obliged to reach the merits of the *res judicata* question with respect to the first two claims for relief.

As the majority indicates, Yoon's state court action sought past, present and future salary payments. His first and second claims seek relief under ERISA, 29 U.S.C. § 1001 *et seq.,* in respect of the same employment relationship and events. As those claims spring from the same transactional nexus as his previous state court action, the state court judgment, under settled New York law,[1] would bar these claims if they could have been raised in the state court action. *See O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981). On the other hand, the state court judgment can bar Yoon's present claims only if they could have been asserted in the previous action—i.e., only if the state court would have had subject matter jurisdiction over them. *Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Valley Disposal, Inc. v. Central Vt. Solid Waste Mgmt. Dist.,* 31 F.3d 89, 98 (2d Cir.1994).

Section 502(e) of ERISA, 29 U.S.C. § 1132(e), provides that federal courts have exclusive jurisdiction of all claims brought under ERISA save that federal and state courts have concurrent jurisdiction over claims pursuant to Sections 502(a)(1)(B) and 502(a)(7), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(7). In consequence, the New York State court that entered the default judgment against Yoon could not have entertained Yoon's present ERISA claims unless those claims fell within Sections 502(a)(1)(B) or 502(a)(7).

---

1. We are obliged by 28 U.S.C. § 1738 to give the prior state court judgment the same effect as would a New York State court. *E.g., Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999).

Yoon's first claim here seeks relief against Fordham for failure to contribute to the Plan and invokes Sections 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3). But Section 502(a)(1)(B) is patently inapplicable, as claims under that section may be brought only against "the plan and the plan administrators and trustees ... in their capacity as such ..." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989). Moreover, an employer like Fordham may not be named as a defendant in a Section 502(a)(1)(B) claim on the theory that it exercises control over the plan administrator and therefore is a *de facto* plan administrator, even where the employer has chosen the plan administrator. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998). Accordingly, even assuming that Yoon's first claim for relief states a legally sufficient cause of action against Fordham, it is a cause of action that does not fall within Section 502(a)(1)(B). It therefore could not have been entertained by the state court in Yoon's prior case.

Yoon's second claim seeks relief against the Plan under Section 502(a)(1)(B) for failure to include contributions from the University after September 1, 1983 in the Plan's calculations of Yoon's pension benefits. But we have held that "[a] claim under [Section 502(a)(1)(B) ], in essence, is the assertion of a contractual right under a benefit plan. In consequence, to enforce the terms of the plan under [Section 502(a)(1)(B),] 'the participant must first qualify for the benefits provided in that plan.'" *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir.1999) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992)).

In this case, the Plan provides for benefits based only on contributions in respect of periods in which salary was paid. Yoon concedes that Fordham paid no salary for the months in which Yoon claims it should have made contributions to the Plan on his behalf. The Plan thus had no obligation to pay benefits based on assumed contributions in respect of those months. Hence, Yoon has not stated a claim for relief under Section 502(a)(1)(B) that might have been entertained by the state court. The state court judgment therefore does not bar his second claim. While Yoon may have a claim for equitable relief under Section 502(a)(3), a point on which I express no opinion, any such claim would lie within the exclusive jurisdiction of the district court.

In view of the foregoing, I agree that the judgment dismissing the first and second claims for relief must be vacated and the case remanded for further proceedings. But I would do so on the ground that the state court judgment does not bar those claims because the state court would have lacked jurisdiction over their subject matter.

That leaves the question whether the dismissal of the third and fifth claims for relief, which were disposed of below on the merits, should be affirmed on the ground that they are barred by the state court judgment. But that question need not detain us long. The third and fifth claims are based explicitly on Sections 502(a)(3) and 502(c)(1)(B) of ERISA. 29 U.S.C. §§ 1132(a)(3), 1132(c)(1)(B). They therefore are within the exclusive jurisdiction of the federal courts. The state court judgment is no bar to their consideration by the district court.