**UNITED STATES of America**

**v.**

**Robert A. SEARLE et al.**

**Misc. No. 13, Sept. Term, 1990.**

Court of Appeals of Maryland.

Jan. 29, 1991.

Marc Richman (Stuart M. Gerson, Asst. Atty. Gen., Breckinridge L. Wilcox, U.S. Atty., Robert S. Greenspan, all on brief), Washington, D.C., for appellant.

David M. Funk, Bryan D. Bolton, Shapiro and Olander, Baltimore, Stephen P. Carney, Hunt Valley, amicus curiae, for Medical Mut. Liability Ins. Soc. of Maryland.

James P. Davenport (Eric L. Lewis, Lori E. Fox, Nussbaum & Wald, all on brief), Washington, D.C., for appellees.

Paul D. Bekman, Scott R. Scherr, Israelson, Salsbury Clements & Bekman, Baltimore, John J. Sellinger, Rockville, Gary I. Strausberg, Janet & Strausberg, Baltimore, amicus curiae, for Maryland Trial Lawyers Ass'n.

Russ M. Herman, New Orleans, amicus curiae, for Ass'n of Trial Lawyers of America.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

On March 20, 1985, Virginia Dale Searle died as the result of negligent treatment she received at Bethesda Naval Hospital. Her husband and six children (the Searles) filed a wrongful death action against the United States (the Government) in the United States District Court for the District of Maryland pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988). Prior to trial, the Government stipulated that its physicians at Bethesda Naval Hospital were negligent in the diagnosis and treatment of Ms. Searle and that such negligence proximately caused her death. The case was tried before the court on the sole issue of damages. Applying Maryland law, the district judge awarded funeral expenses and other pecuniary damages which are not pertinent to the issue before this Court. The judge also, after finding that "the record fully establishes what a wonderful person ... what a wonderful wife and mother she was ..." and "that she was an amazing woman, not only in terms of her goodness but in terms of

her talents and her drive," awarded additional damages in the following amounts:

| | |
|---|---:|
| Ms. Searle's lost household services | $200,000 |
| Solatium—Leland E. Modesitt III son | $ 50,000 |
| (age at date of death—18) | |
| Solatium—Susan C. Modesitt daughter | $ 75,000 |
| (age at date of death—17) | |
| Solatium—Catherine G. Modesitt daughter | $125,000 |
| (age at date of death—15) | |
| Solatium—Nancy M. Modesitt daughter | $150,000 |
| (age at date of death—14) | |
| Solatium—William B. Searle son | $300,000 |
| (age at date of death—5) | |
| Solatium—Jessica W. Searle daughter | $300,000 |
| (age at date of death—4) | |
| Solatium—Robert A. Searle surviving spouse | $250,000 |

The Government noted a timely appeal of the damage award to the United States Court of Appeals for the Fourth Circuit. On appeal, it argued that the solatium damages were excessive and that the district judge's allocation of part of the award for household services was duplicative recovery of the solatium damages.

On March 9, 1990, a divided panel of the Fourth Circuit issued an unpublished opinion reversing the district court awards for solatium damages and remanding the case for recalculation of damages. A summary of the decision and the subsequent procedural history of the case was set out in an order of the Fourth Circuit certifying three questions of law to this Court pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, §§ 12–601 to 12–609 and Maryland Rule 8–305. The panel's holding and subsequent action was summarized as follows:

"Under the applicable [Federal Tort Claims Act] choice of law provisions, we held that the district court properly applied the law of Maryland. *United States v. Muniz,* 374 U.S. 150, 153 [83 S.Ct. 1850, 1852, 10 L.Ed.2d 805] (1963); 28 U.S.C. § 1346(b) and § 2624.

In reviewing the award for clear error, Fed.R.Civ.P. 52(a), we found that because this cause of action arose before the imposition of the $350,000 Maryland cap on the award of solatium damages, the cause was not controlled by that cap. [Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art., § 11–108.] However, in order to ensure equity and uniformity in the award of non-economic damages in Maryland between cases arising before the effective date of the statutory cap and those arising after the statute became effective, we directed that deference should be given to the reasonableness established by the legislature for solatium awards and should not exceed that cap without some expression of reason. Further, citing with favor the language of *Potomac Electric Power Co. v. Smith* [79 Md.App. 591], 558 A.2d 768 (1989), this court held that in connection with such deference, an award of solatium damages is to be limited to $350,000 in the aggregate in a wrongful death action and not to the damages of each plaintiff individually.

Finally, we found that the solatium statute Md.Cts. & Jud. Proc.Code Ann. § 904(d) (1984 Repl.Vol.) anticipates the recovery of household services and therefore the separate award of such damages is tantamount to a double recovery and clearly objectionable.

Subsequent to the panel decision, the question of whether to conduct a rehearing *en banc* arose, which led to the decision to certify these questions of law to the Maryland Court of Appeals. It is clear that these matters, squarely rooted in the law of Maryland, should be authoritatively addressed by the Maryland judiciary. Accordingly, this matter is certified to the Maryland Court of Appeals for the resolution of the three issues here presented."

Three "Questions of Law" were certified to this Court.

Question I. WHETHER THE SOLATIUM CAP OF $350,000 FIXED BY MD.CODE (1974, 1989 REPL.VOL.), CTS. & JUD.PROC. ART., § 11–108 MAY BE GIVEN DEFERENCE IN REVIEWING AN AWARD, PARTICULAR-

LY ONE IN EXCESS OF THE STATUTORY MAXIMUM, IN CASES ARISING PRIOR TO THE EFFECTIVE DATE OF THE CAP BUT TRIED AFTER THAT DATE?

▉ Cts. & Jud.Proc. Art., § 11–108(b) clearly states the cap does not apply retroactively:

"(b) *Limitation of $350,000 established.*—In any action for damages for personal injury *in which the cause of action arises on or after July 1, 1986,* an award for noneconomic damages may not exceed $350,000." (Emphasis added.)

By its terms, the cap only applies to actions arising on or after July 1, 1986. Since this cause of action arose prior to July 1, 1986, the statute is not directly applicable. Recognizing that the $350,000 statutory maximum is not mandatory, the Fourth Circuit asks us whether it nevertheless should be given deference.

Our analysis is based on the well-recognized principle of Maryland law that statutes are presumed to operate prospectively and are construed accordingly. *See WSSC v. Riverdale Fire Co.,* 308 Md. 556, 560–68, 520 A.2d 1319, 1321–26 (1987). In the absence of legislation, the question of excessiveness of damages is a judicial determination governed by judicially-created principles. The Legislature specifically made the cap statute prospective only. This would indicate a clear legislative policy that there should be no $350,000 limit on damages that occurred before the statute's effective date.

Deference is defined as "a yielding in opinion; submission of judgment to the opinion or judgment of another." *Webster's New Universal Unabridged Dictionary* 476 (2d ed. 1983). The Fourth Circuit's initial opinion in the instant case gave deference to the $350,000 cap on noneconomic damages by making it, in effect, a presumptive maximum. The panel held that courts should not exceed that $350,000 cap "without some expression of reason." The effect of the decision was that the statute, which by its terms created a prospective, mandatory $350,000 cap, also created a retroac-

tive, presumptive $350,000 cap. As we have already indicated, absent clear legislative expression to the contrary, statutes are to be applied only prospectively and shall not be given retroactive effect. *Traore v. State*, 290 Md. 585, 593–94, 431 A.2d 96, 100 (1981); *Kastendike v. Baltimore Ass'n*, 267 Md. 389, 395–96, 297 A.2d 745, 749 (1972). The $350,000 cap is prospective only and should not be given retroactive effect as a presumptive maximum. Therefore, the answer to Question I is no.

Question II. WHETHER THE MARYLAND SOLATIUM CAP OF $350,000 IS APPLICABLE TO EACH CLAIMANT OF SOLATIUM, OR IS IT A COMPREHENSIVE OVERALL SOLATIUM MAXIMUM APPLICABLE ONLY ONCE, NO MATTER HOW MANY CLAIMANTS THERE ARE?

The parties agree, and we concur, that, if the cap statute, Cts. & Jud.Proc. Art., § 11–108, is not given deference in reviewing an award for a cause of action that arose prior to its effective date, we need not answer Question II. Whether the $350,000 cap applies separately to each solatium award or whether it is a comprehensive solatium maximum applicable to the aggregate of all solatium claims would not be determinative in the instant case if the cap, whatever it is, is not given deference. Under Cts. & Jud. Proc. Art., § 12–601, this Court may answer questions certified to it if the questions "may be determinative of the cause then pending in the certifying court." Where the Court's answer to one certified question has made the answer to another question no longer determinative, we have declined to reach the unnecessary question. *See e.g. Mut. Fire, Marine & Inland Ins. v. Vollmer*, 306 Md. 243, 245, 508 A.2d 130, 131 (1986); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 234 n. 6, 492 A.2d 1286, 1296 n. 6 (1985).

Question III. WHETHER, IN MARYLAND, HOUSEHOLD SERVICES ARE ENCOMPASSED WITHIN THE TERM "SOLATIUM"?

The element of damages referred to as "household services" can have both pecuniary and nonpecuniary aspects.

Where a claim is made for the nonpecuniary aspect of household services, the award may overlap the claim for solatium damages. But where an award for household services is compensation for the loss of domestic services and is based on the market value of those lost services, the award is pecuniary and is not duplicative of the solatium damages. These are services that can be performed by domestic workers and their replacement value is measured by prevailing wage rates for such services.

The parties are also in agreement, and we concur, on the answer to this question. The Government states in its reply brief:

"There is no dispute between the parties on the legal issue presented by the third certified question. Both sides agree that nonpecuniary household services constitute solatium and pecuniary do not; both sides accept the lines drawn by *Edmonds v. Murphy,* 83 Md.App. 133, 573 A.2d 853, 870 (1990) [*cert. granted,* 321 Md. 46, 580 A.2d 1066 (1990) ]. The Fourth Circuit has not asked this Court to examine the record and determine whether the award here was for pecuniary or nonpecuniary household services, and, if the former, whether that award could be sustained. Those issues are for the Fourth Circuit when the case is returned by this Court."

In Maryland, household services are not encompassed within the term "solatium" if the award is for the pecuniary loss of homemaker services and is based on the market value of those lost services. *See Terry v. O'Neal,* 194 Md. 680, 72 A.2d 26 (1950); *Industrial Service Co. v. State,* 176 Md. 625, 6 A.2d 372 (1939).

CERTIFIED QUESTIONS ANSWERED AS ABOVE SET FORTH. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.